# In re W-F-, Respondent

*Decided June 18, 1996*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The provisions of section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994), apply any time an alien, whose presence has not been excused by the Immigration Judge, fails to appear for a deportation hearing after proper notice has been issued pursuant to section 242B, regardless of whether the issue of deportability has already been addressed or resolved and regardless of whether the alien has someone else appear on his behalf.

(2) An Immigration Judge retains the authority to properly excuse an alien's presence at a hearing, to grant a continuance, or to change venue for good cause shown by the alien or the Immigration and Naturalization Service either prior to or at the time of the deportation hearing.

(3) If an alien's presence at a deportation hearing has not been excused, and any request for a rescheduling of the hearing has not been granted, the provisions of section 242B apply and a challenge to the entry of an in absentia deportation order based on the alien's failure to appear is governed by the "rescission" provisions of section 242B(c)(3) of the Act.

FOR RESPONDENT: Grosvenor Anschel, Esquire, Bellevue, Washington

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

HOLMES, Board Member:

In a decision dated November 24, 1995, an Immigration Judge denied the respondent's motion to reopen his deportation proceedings based on a finding that the respondent had failed to show "exceptional circumstances" for his failure to appear at a deportation hearing held on September 23, 1994. *See* section 242B(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) (1994). On November 28, 1995, the Immigration Judge certified his decision to this Board for review pursuant to regulations at 8 C.F.R. §§ 3.1(c), 242.8 (1995).[1] The decision of the Immigration Judge is affirmed

---

[1] We note that on or about December 7, 1995, the parties were advised by the Immigration Court that they could submit additional briefs to the Board. None have been submitted, although on February 13, 1996, the Board did grant the respondent a temporary stay of deportation pending review of the decision of the Immigration Judge.

insofar as it denied the respondent's motion to reopen the deportation proceedings.

## I. BACKGROUND

The respondent is a 32-year-old native and citizen of Poland. On October 24, 1993, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) which charged him with deportability under section 241(a)(1)(B) of the Act, 8 U.S.C. § 1251(a)(1)(B)(Supp. V 1993). The Service alleged that the respondent entered the United States without inspection on or about March 2, 1991. On March 21, 1994, the Immigration Court issued notice that the respondent should appear for a hearing on June 23, 1994.

The respondent was absent on June 23, 1994, but an attorney appeared on his behalf. Counsel acknowledged proper service of the Order to Show Cause, conceded deportability on the respondent's behalf, and indicated the respondent's desire to have an application for relief from deportation considered. Counsel explained that the respondent was at sea working on a fishing vessel and requested a continuance of the hearing. The Immigration Judge continued the proceedings until September 23, 1994. Both written and oral notices were provided for the hearing date and the Immigration Judge expressly warned counsel that further continuances would not be granted on the basis of the respondent's employment.

The respondent failed to appear for the deportation hearing on September 23, 1994. Once again, his counsel was present. Counsel did not contest the adequacy of the notice of hearing. While no request for a continuance had been filed before the hearing date, he requested a further continuance of the proceedings because the respondent was still working. He provided a letter from the respondent's employer stating that it was "impossible" to get the respondent to disembark "at this time." The letter was dated September 22, 1994.

The Immigration Judge ultimately denied the request for a continuance. His denial was based on a consideration of the reasons for the request, on its timing, and on his previous admonitions. The Immigration Judge concluded the proceedings by entering an "Order Based on Abandonment." He found that the deportation charge had been adequately established, and that the respondent had abandoned any potential applications for relief due to his failure to appear. However, he did grant the respondent the privilege of voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e) (1994). He notified the respondent that any appeal would be due by October 3, 1994.

The respondent subsequently filed a timely Notice of Appeal (Form EOIR-26) before the Board. He argued that his request for a continuance should have been granted, and that it was reasonable considering the nature of his employment.

In a decision dated October 23, 1995, we found that we lacked jurisdiction over the appeal in view of the provisions of section 242B of the Act. We noted that section 242B(c)(3) of the Act provides that an order issued after a hearing held in absentia under section 242B can only be rescinded upon the filing of a motion to reopen with the Immigration Judge. *See Matter of Gonzalez-Lopez*, 20 I&N Dec. 644 (BIA 1993). Because the respondent had been instructed to file an appeal and because, inter alia, of the 180-day filing requirement of section 242B(c)(3)(A), we construed the appeal as a motion to reopen and returned it to the Immigration Judge for adjudication.

## II.   THE IMMIGRATION JUDGE'S DECISION AND CERTIFICATION

On November 24, 1995, the Immigration Judge issued his decision. He initially questioned the Board's decision to remand the case under section 242B of the Act as opposed to conducting a review on direct appeal. However, upon employing section 242B of the Act, the Immigration Judge concluded that the respondent's economic pursuits did not constitute the "exceptional circumstances" which would be necessary to excuse his failure to appear. *See* sections 242B(c)(3)(A), (f)(2) of the Act. In the alternative, the Immigration Judge found that the respondent did not present "good cause" for a continuance, and that his failure to appear constituted an abandonment of his application for relief from deportation.

On November 28, 1995, the Immigration Judge certified his decision to this Board. In his decision, the Immigration Judge raised the issue of whether section 242B of the Act should be applied to the respondent's case, where deportability had been resolved, the alien failed to appear for a subsequent hearing scheduled to consider applications for relief, but counsel had been present to request a continuance. The Immigration Judge in particular noted three reasons, further discussed below, weighing in favor of treating such cases as being outside the scope of section 242B of the Act. He indicated his view that Immigration Judges had reached different conclusions regarding the issues presented in this case and that the Board's guidance on this matter would be valuable. We agree with the Immigration Judge that this is a matter that requires clarification and uniform application.

Upon consideration, we find that the provisions of section 242B of the Act do apply any time an alien, whose presence has not been excused by the Immigration Judge, fails to appear for a deportation hearing after proper notice pursuant to the requirements of sections 242B(a)(2) and (c) of the Act. The provisions of section 242B(c) apply regardless of whether the issue of deportability already has been addressed or resolved and regardless of whether the alien has someone else appear on his behalf, unless the alien's attendance has been properly excused by the Immigration Judge.

## III.  SECTION 242B OF THE ACT

Section 242B of the Act was added by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. *See generally Matter of Gonzalez-Lopez, supra*, at 645.[2] This section provides, inter alia, notice requirements for Orders to Show Cause and hearing notices, and it addresses the consequences of an alien's failure to appear for a scheduled deportation hearing. *See generally Matter of Grijalva,* 21 I&N Dec. 27, 30-31 (BIA 1995). Section 242B(c)(1) of the Act sets forth the specific conditions under which a hearing will be held in absentia. It states in pertinent part:

> Any alien who, after written notice required under subsection (a)(2) has been provided to the alien or the alien's counsel of record, does not attend *a proceeding* under section 242, shall be ordered deported under section 242(b)(1) in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable. (Emphasis added.)

The issue before us is one of statutory construction. The object of statutory construction is to determine the congressional intent with respect to the legislation enacted. If the statutory language is clear, that is the end of the inquiry, as Immigration Judges and the Board, as well as the courts, clearly "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984). The paramount index of congressional intent is the plain meaning of the words used in the statute as a whole. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *see also Matter of Grinberg*, 20 I&N Dec. 911 (BIA 1994). And, it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used. *INS v. Phinpathya,* 464 U.S. 183, 189 (1984). Moreover, in ascertaining the "plain meaning" of the statute, the Board "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988).

Section 242B(c)(1) of the Act addresses the failure of an alien to attend "a" properly scheduled proceeding. It draws no distinctions between hearings which are held before or after deportation charges have been addressed or resolved. Thus, we find the plain meaning of the language of the statute answers the principal question before us.[3] Regardless of the stage of the deportation proceedings, if the alien fails to appear at a properly scheduled hearing and his or her attendance has not been excused by the Immigration Judge, the provisions of section 242B(c) of the Act will apply.

---

[2] Section 242B of the Act applies to a deportation hearing where notice of the scheduled hearing date is issued on or after June 13, 1992. *See Matter of Gonzalez-Lopez, supra.*

[3] This is consistent with the recognition that determinations of deportability and those regarding relief from deportation are part of one single deportation proceeding. *See Foti v. INS*, 375 U.S. 217 (1963).

Moreover, we note that this conclusion is consistent with the overall statutory scheme of section 242B of the Act. For example, the notice provisions of this section do not differentiate between hearings which address deportation charges and those which address applications for relief from deportation. *See* section 242B(a)(2) of the Act; *see also* section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994); *Matter of Grijalva, supra*; 8 C.F.R. § 3.26 (1995); *cf.* section 242B(e)(4) (specifically addressing consequences of a failure to appear for an asylum hearing after proper notice). We consider also that this reading of the statute provides a uniform standard for review of every unauthorized failure to appear for a properly scheduled deportation hearing before an Immigration Judge. Indeed, it would make little sense to conclude that Congress was solely concerned with one stage in the hearing process, rather than the entirety of the deportation proceedings before an Immigration Judge.[4]

We therefore hold that when a respondent fails to appear for any stage of a deportation proceeding after receiving proper notice pursuant to the provisions of sections 242B(a) and (c) of the Act and his or her presence has not been excused by the Immigration Judge, the provisions of section 242B of the Act are applicable.[5] Where the in absentia hearing results in an order of deportation, an alien seeking to challenge the entry of the in absentia order of deportation can only do so by the filing of a motion to reopen with the Immigration Judge pursuant to the provisions of section 242B(c)(3) of the Act. *See Matter of Gonzalez-Lopez, supra*. The alien must then establish that "exceptional circumstances" existed for the absence, unless a notice or custody issue was involved. *See* section 242B(c)(3) of the Act; *see also Matter of Grijalva, supra.*

The Immigration Judge on certification expressed three principal concerns with such a conclusion. The principal issue in this case is one of statutory interpretation, and it is upon this basis that we have reached our decision. However, the concerns reflected in the Immigration Judge's decision certainly warrant discussion.

First, the Immigration Judge noted that the Board ordinarily does not have the benefit of a transcript when it reviews an Immigration Judge's decision regarding a motion to reopen. In circumstances where a representative has appeared on an absent alien's behalf, the Immigration Judge concluded that a transcript could be essential to the resolution of an appeal from the decision regarding the motion. However, the reasons for the alien's failure to appear

---

[4] Congressional concern with the entirety of the deportation hearing process is reflected in the limitations on discretionary relief for failure to appear that were also established in section 242B. *See* section 242B(e) of the Act.

[5] Inherent in any deportation order issued under section 242B of the Act is a finding that any applications for relief have been abandoned for failure to prosecute. We note, however, that the provisions of section 242B of the Act do *not* apply where a deportation order is entered against an alien for failure to timely file an application for relief where there is no failure to appear for a hearing involved. *See Matter of R-R-,* 20 I&N Dec. 547 (BIA 1992).

are ordinarily not matters of record at the hearing, but are set forth in conjunction with the subsequent motion. Moreover, this Board has the authority to direct that a transcript be prepared in any case in which it deems a transcript necessary for a proper consideration of an appeal or motion.

The Immigration Judge also opined that the holding we have reached today would interfere with the prompt conclusion of deportation proceedings. However, that should no more be the case in the factual circumstances here than otherwise would occur under the "rescission" procedures of section 242B(c). The delay in the present case resulted from understandable procedural confusion that should be resolved, at least in part, today. In any event, in our view the holding in this case more likely will eliminate delay than cause it.

Finally, the Immigration Judge expressed concern that the application of section 242B in the current case would obviate the "good cause" standard used by an Immigration Judge to determine when a continuance should be granted. *See* 8 C.F.R. § 242.13 (1995); *see also* 8 C.F.R. § 3.20(b) (1995). We do not find such to be the case. An Immigration Judge retains the authority to grant a continuance or change venue when good cause is shown by an alien or the Service, either prior to or at the time of the deportation hearing. *See, e.g., Romero-Morales v. INS,* 25 F.3d 125, 128 (2d Cir. 1994) (finding that an Immigration Judge was not precluded from considering a pending change of venue motion in a case where counsel appeared at the scheduled deportation hearing on the alien's behalf).

Moreover, if an Immigration Judge has properly excused the alien's appearance at a hearing (e.g., where it is impracticable for an alien to appear due to mental incompetence or where an infant alien's attendance with his or her parents at a hearing is excused as unnecessary), the statute of course does not compel the Immigration Judge to enter an order of deportation in absentia. *See, e.g.*, 8 C.F.R. § 242.11 (1995). Inherent in the "failure to appear" provisions of section 242B is the concept of *unauthorized* absence from deportation proceedings. Where a deportation hearing has been recalendared for good cause shown or when an alien's appearance has been otherwise excused, section 242B would not apply.

However, if an absent alien's presence at a deportation hearing has not been excused and any request for a rescheduling of the hearing has not been granted, the provisions of section 242B(c) of the Act apply. Thereafter, under the "rescission" provisions of section 242B(c), a challenge to the entry of any in absentia order based on the alien's failure to appear can only be sustained if the failure to appear was because of "exceptional circumstances," the absence of adequate notice, or the alien was in federal or state custody and did not appear through no fault of the alien. In seeking to demonstrate "exceptional circumstances," a respondent can present the reasons underlying the request for a continuance, along with any other reasons for his or her absence, in the motion to reopen filed before the Immigration Judge under section 242B. *See Romero-Morales v. INS, supra*, at 129-30.

## IV. EVALUATION OF THE RESPONDENT'S FAILURE TO APPEAR

In light of the above discussion, the respondent's motion to reopen following the in absentia order in this case must be evaluated under section 242B(c)(3)(A) of the Act. That section provides that such an order can only be rescinded because of "exceptional circumstances." Section 242B(f)(2) of the Act, in turn, defines "exceptional circumstances" as follows:

> The term "exceptional circumstances" refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien.

The respondent failed to appear for his deportation hearing because he was on a fishing vessel for employment purposes. We agree with the Immigration Judge that this excuse does not rise to the level of exceptional circumstances as set forth above. In this regard, we note that one must look to the "totality of circumstances" to resolve this issue of exceptional circumstances. *See* H.R. Conf. Rep. No. 955, 101st Cong., 2d Sess. 132 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797 ("[T]he conferees expect that in determining whether an alien's failure to appear was justifiable the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear.")

Here, the respondent's situation has not been shown to be "exceptional," unforeseeable, or in any way beyond his control. Rather, after due warning from the Immigration Judge to his counsel, the respondent elected to pursue his business interests rather than attend a deportation hearing scheduled long in advance. Without suggesting whether such would be an explanation amounting to exceptional circumstances, we note that there is no evidence that the respondent departed on the commercial fishing vessel prior to the institution of the deportation proceedings or the scheduled hearings. There is no evidence that he could not have returned at some point prior to the hearing dates. The letter from his employer referencing the impossibility of getting him off the vessel "at this time" was dated the day before the final deportation hearing. Furthermore, the hearing had already been recalendared once and respondent's counsel specifically warned that no further adjournments would be permitted on these grounds. Finally, we note that the respondent had many months to arrange for his attendance, yet waited until the day of the hearing to pursue a request for a continuance. Considering all these facts, the Immigration Judge properly found that "exceptional circumstances" had not been demonstrated for the respondent's failure to appear on September 23, 1994.

In sum, the respondent has not presented exceptional circumstances for his failure to appear at his deportation hearing as mandated under the provisions of section 242B(c)(3)(A). Therefore, the decision of the Immigration Judge denying the respondent's motion to reopen will be affirmed.

**ORDER:**     The decision of the Immigration Judge is affirmed.

*CONCURRING AND DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully concur in part and dissent in part.

I agree with the ultimate conclusion of the majority. However, in my view that conclusion begs the question(s) raised by the Immigration Judge who certified this case to this Board. The majority decision does not, in my view, explicitly address, as a practical matter, how to handle the variety of circumstances in which in absentia deportation issues may be implicated on a daily basis before Immigration Judges. Further, to the extent the majority opinion suggests, or could be read to suggest, either that the only motion which may be filed following an in absentia order is a motion to reopen to rescind under section 242B(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) (1994), or that an alien's unauthorized absence from a hearing absolutely extinguishes all applications for relief, I believe the opinion requires clarification.

Consequently, I write separately concerning my interpretation of how and when the Immigration Judges and this Board shall determine whether an alien ordered deported in absentia could make or has made an effective rebuttal of proper notice, could demonstrate or has demonstrated an excused absence on account of being held in custody or for extraordinary circumstances, or, for that matter, has established eligibility for reopening to seek a grant of discretionary relief from deportation before the Immigration Judge. In addition, I write to distinguish emphatically the regulatory motion to reopen procedures which are *not* governed or affected by the statutory provisions of section 242B of the Act. *See* 8 C.F.R. §§ 103.5, 244.22 (1995).

*First, I agree that principles of statutory construction support section 242B(c)(1) being applicable to unexcused absences at various stages of deportation proceedings.* It is correct to state that the issue before us is, in large part, one of statutory construction. As I have indicated, I am in accord with the premise that section 242B does not limit the entry of an in absentia deportation order only to the initial hearing or to the "deportability" phase of the proceedings.

In addition to the reasons put forth by the majority, I note that the statutory language in section 242B(c)(1) mandates that the alien "shall be ordered deported," not "be found deportable," which I read as a plain indication that Congress was treating deportation proceedings comprehensively, as the Supreme Court did under *Foti v. INS*, 375 U.S. 217 (1963), to encompass the adjudication of deportability and ancillary applications for relief from deportation. Further, I note that the recent amendments to 8 C.F.R. §§ 3.1, 3.23, and 242.21, *see* 61 Fed. Reg. 18,900 (1996), to be effective July 1, 1996, pertaining to motions to reopen, do not distinguish between various stages of deportation proceedings resulting in absentia orders. Therefore, I concur with the majority that the statutory language and implementing regulations

provide undifferentiated authority allowing Immigration Judges to issue in absentia orders throughout the course of deportation proceedings. I use the term "allowing" rather than "requiring" because, as I discuss herein, while the provisions of the statute are mandatory, nowhere do they expressly supersede the discretion of the Immigration Judge to otherwise conduct deportation proceedings according to the statute and regulations.

*Second, the distinct statutory language of section 242B(c)(1) compared with that of section 242B(e) does not support identical treatment of applications for relief from deportation.* Neither the statutory language nor the legislative history supports an interpretation which renders section 242B(c)(1) more a penalty provision than a deliberate measure to achieve prompt determinations and closure in the cases of deportable aliens. The overriding objective of Congress in enacting section 545 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-67, was to bring aliens to their hearings, and the legislative history does not contain a punitive intent. *See generally* Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, part II. B. (1993) (S. 358 Conference Committee report incorporated certain previously excluded enforcement provisions to ensure that aliens were properly notified and in fact would appear for their hearings).

To the extent that the majority contends that "the notice provisions of this section do not differentiate between hearings which address deportation charges and those which address applications for relief from deportation," *see supra* p. 5, I must disagree. In fact, the language of the statute makes clear that there are substantive distinctions between the notice requirements and the attendant consequences which attach to certain phases of the hearing and certain forms of relief from deportation. As the majority notes, citing *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988), a construction of the statutory language which takes into account the design of the statute as a whole is preferred. *See also COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.,* 489 U.S. 561 (1989) ("whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole).

The statute addresses, specifically and in plain language, the written notice which must be provided in order to initiate and to proceed with an in absentia hearing. An Order to Show Cause or a subsequent notice containing notice of the time and place of the initial or rescheduled hearing, as well as the consequences of failure to appear and the exception to those consequences, must be provided to the alien in person, or if personal service is not practicable, by certified mail to the alien or the alien's counsel of record. *See* sections 242B(a)(1), (2) of the Act. This Board has construed this statutory requirement to be satisfied, at least in the latter case, upon mailing through the United States Postal Service to the alien's most recent address provided under section 242B(a)(1)(F) of the Act. *Matter of Grijalva,* 21 I&N Dec. 27

(BIA 1995). However, I note that to date, we have not specifically addressed in a published decision the adequacy of the content of the notice.

Also on its face and by the use of plain language, the statute imposes distinct disqualifications from applying for or being granted certain forms of relief from deportation resulting from failure to appear after proper notification. See section 242B(e)(5) of the Act, which itemizes the forms of relief barred, presuming proper notice has been given and an unexcused failure to appear occurs. For these consequences, above and beyond the entry of the in absentia order, to take effect, the form of notice must be both oral and written. See section 242B(e)(1) of the Act, which refers to oral notice "either in the alien's native language or in another language the alien understands," having been given "at the time of the notice provided in subsection (a)(2)." Section 242B(e)(4)(B)(i), pertaining to proceedings involving asylum applications, requires written notice "in English and Spanish" and "oral notice either in the alien's native language or in another language the alien understands."

By contrast, no such limitations on granting relief are imposed under section 242B(c)(1) of the Act. An individual who was provided notice to appear under section 242B(c)(1) and who may be subject to an in absentia order of deportation is not necessarily forced to forfeit a pending application for relief from deportation not barred by the terms of the statute.

*Third, I believe that the Immigration Judge may address the relevant issues which either precede or flow from the rule that in absentia orders may be entered at various stages of the proceedings.* As suggested by the Immigration Judge in certifying this case for our review, in many cases, the prudent determinations of the Immigration Judge may be better exercised before the fact. Thus, I believe the better reading of the statute is to allow latitude to the Immigration Judge to address, at the time that failure to appear occurs, the cases of those aliens whose nonappearance may be excusable on the statutory grounds of either defective notice, custody, or extraordinary circumstances, as characterized by the majority.

The circuit courts of appeals which have addressed this issue have indicated a concern with a narrow, literal reading of the in absentia provisions, *see, e.g., Romero-Morales v. INS*, 25 F.3d 125 (2d Cir. 1994), and most likely would affirm an approach which gives effect to the statute without inordinately burdening either the alien or the hearing process. I think that decision, cited by the Immigration Judge, deserves further consideration. While in that case, the United States Court of Appeals for the Second Circuit addressed specifically a motion for change of venue, there is no reason to conclude that such an approach is not equally appropriate with respect to other procedural matters affecting the handling of other cases.

I do not pretend to be able to forecast the entire panoply of situations in which an Immigration Judge may be otherwise required to enter an in absentia order under section 242B(c)(1) of the Act according to the decision we reach today. However, it is not difficult to project various scenarios in which

the Immigration Judge might opt for a more practical resolution which comports with the dual goals of fairness and efficiency in deportation proceedings.

For example, a respondent, having an arguable claim of defective notice based on a properly submitted change of address not apparent in the record file, may have belatedly received notice through third persons at his or her correct and current address. If that individual or her attorney contacts the Immigration Court just prior to or on the hearing date and acknowledges actual notice but the inability to appear because of the brevity of notice in light of the travel distance, I see no reason to require an Immigration Judge to enter an in absentia order simply by virtue of the alien's failure to appear, only to be faced thereafter with the respondent's motion to rescind to reopen. Rather, the Immigration Judge could continue the case, or with the alien's consent handle it telephonically. If that individual arrives an hour or two after the scheduled hearing time, I see no reason simply to issue or to maintain an already issued in absentia order. Rather, an Immigration Judge could opt to vacate and revise his or her order to then and there acknowledge the situation and simply reschedule proceedings. *See Thomas v. INS,* 976 F.2d 786 (1st Cir. 1992) (Breyer, J., concurring) (finding that tardiness at the hearing did not significantly interfere with the Immigration Judge's ability to conduct it; and that the Board acted arbitrarily in refusing to order a new hearing, procedural interference, and the serious claim for relief from deportation).

Also, for example, if a respondent, family member or other medical professional or official contacts the Immigration Court from an emergency room where the respondent awaits treatment following a traffic accident on or close to the day of the scheduled proceeding, and documentation of that situation is provided, I see no reason for an Immigration Judge to have to enter an in absentia ruling only to later rescind it in the context of a motion to reopen. Instead the Judge may assess and rule upon the situation immediately, albeit in the context of adjudicating a continuance. Similarly, an attorney or representative of the respondent may appear before the Immigration Judge on the appointed date and present comparable information on behalf of a client. Certainly in such cases, local Immigration Court rules should ordinarily be followed, and there should be service by the respondent upon the Immigration and Naturalization Service that such events have transpired. However, in appropriate cases an Immigration Judge could either grant a continuance or excuse the respondent's absence. I also believe that an Immigration Judge may take notice of such circumstances as the physical relocation of the Immigration Court between an original and a continued proceeding, which may have engendered confusion and resulted in a failure to appear.

Further, I believe that the existing regulations provide the Immigration Judge with authority to so act. In addition to the Immigration Judge's authority to order a continuance or adjournment of the proceedings, and her or his authority to excuse the presence of a minor or mentally impaired person

pursuant to 8 C.F.R. § 242.13 (1995) or 8 C.F.R. § 242.11 (1995), recognized by the majority, 8 C.F.R. § 3.25 (1995) allows an Immigration Judge to waive the respondent's appearance where the alien is represented. This regulation provides even broader authority to excuse the presence of the respondent in such proceedings.

Moreover, I believe that 8 C.F.R. § 3.25 counters any argument that an Immigration Judge is divested of authority to grant relief in the case of an alien who fails to appear, but whose counsel appears. For example, assume that an Immigration Judge has heard extensive testimony and/or received into the record probative and compelling documentation supporting either a grant of political asylum, or in the alternative, voluntary departure. For some reasons, perhaps unknown, the respondent fails to appear at the scheduled proceeding in which the Immigration Judge will deliver his or her oral decision. In such a situation, in my view, the Immigration Judge need not simply enter an in absentia order; rather, he or she has the latitude to determine that the respondent's presence is excused and proceed to render the oral decision and order in the case. In particular, as I read the statute and regulations together, in the instant case, the Immigration Judge might have opted to deny a continuance but simply excused the respondent's absence and granted voluntary departure.

In other words, I see nothing in the statute that so limits the Immigration Judge's discretion to achieve precisely the result which he declared originally in this case. As I read the holding of the majority, with which I concur, it is more a matter of semantics and the election of which procedure to invoke. Indeed, as the majority acknowledges, our decision today does not tie the Immigration Judge's hands or limit his or her discretion to independently assess the individual circumstances that might warrant a result other than an in absentia deportation order.

*Fourth, our ruling does not address or bar otherwise proper motions to reopen for relief based upon recently acquired eligibility or evidence which was not previously available which might affect the outcome.* A motion to reopen to rescind is distinct from a motion to reopen, and each is governed by separate provisions in the regulations. Our holding today that the in absentia order may be challenged only under section 242B(c)(3) of the Act, does not—and should not—be read to foreclose an alien from seeking to reopen such a deportation proceeding for consideration of an application for political asylum, or for any other forms of relief from deportation that may be available according to the terms of the current statute not barred by section 242B(e) as the result of proper notification having been given under section 242B(e)(1).

Thus, I can agree that an alien who, having had proper notice and lacking a showing, before or after the fact, as I have discussed, of defective notice or extraordinary circumstances, fails to appear for a deportation hearing, is *subject to* entry of an order of deportation, upon a finding that deportability has

been established by the Service by clear, unequivocal, and convincing evidence. However, I do not agree with the majority opinion to the extent it states or gives the impression that the only action then available to an Immigration Judge is entry of such an order, and that the only mechanism by which an Immigration Judge may further adjudicate or resolve the case before her or him is through a motion to reopen to rescind under section 242B(c)(3).